**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MARY ROBINSON**                                                                                    **PLAINTIFF**

V.                                      No. 4:06CV01547-BD

**MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration**[1]                                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action for review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits and supplemental security income benefits. For reasons which follow, the decision of the Administrative Law Judge[2] is AFFIRMED.

**I.      Procedural History:**

Plaintiff Mary Robinson filed her applications for disability insurance benefits and supplemental security income benefits on May 17, 2004 (Tr. 53A-53B, 209-12), alleging disability since April 6, 2004, due to fibromyalgia/chronic fatigue syndrome and depression (Tr. 53A, 55, 62, 209, 222). Her application was denied initially and upon

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

[2]The Honorable Garry L. Brewer.

1

reconsideration. Plaintiff requested a hearing on September 20, 2004, and the ALJ held a hearing on November 3, 2005. Ms. Robinson appeared at the hearing with her counsel.

The ALJ issued his decision that Plaintiff was not disabled on June 27, 2006 (Tr. 8-17), after finding that Plaintiff had the residual functional capacity to perform the full range of medium work. (Tr. 14) The ALJ concluded that Plaintiff could return to her past relevant work as a receptionist, which is classified as semi-skilled, requiring sedentary exertion. (Tr. 16). The Appeals Council declined review on October 13, 2006 (Tr. 3-6). Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

**II.	Background:**

Plaintiff was thirty-three years old at the time of the hearing. She testified that she lived with her husband and three children, aged five to thirteen. (Tr. 223) She had a high school education and a one-year associate's degree in computerized accounting from a vocational school. (Tr. 223) She had past relevant work experience as a receptionist, clerk/cashier, factory worker, and waitress. (Tr. 224-25) Ms. Robinson was five feet, two inches tall at the time of the hearing and weighed approximately 200 pounds. (Tr. 224)

### III.     Findings of the ALJ:

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process.[3] The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I) (2005). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id*. at §§ 404.1520(b); 416.920(b). In this case, the ALJ found that Ms. Robinson was not engaged in substantial gainful employment and that she had not been so engaged since the onset of her alleged disability. (Tr. 12)

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id*. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id*. at §§ 404.1520(c); 416.920(c). The ALJ found that Plaintiff suffered from a severe impairment, fibromyalgia. (Tr.12) He found that Plaintiff's other complaints, including depression, were not severe. (Tr. 13)

Step 3 involves a determination of whether the severe impairment meets or equals a listed impairment. *Id*., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If so, and the duration

---

[3]Because the ALJ found that Plaintiff could return to her past relevant work at step four of the five-step process, he did not need to proceed to step five in the sequential analysis, *i.e.* whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.

requirement is met, benefits are awarded. *Id.* If the claimant does not meet or equal a listing, then a residual functional capacity assessment is made. *Id.*, § 404.1520(a)(4); § 416.920(a)(4). The ALJ determined that Ms. Robinson did not meet or equal a listing and proceeded to make a functional capacity assessment.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*, §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If so, benefits are denied, and the analysis ends. *Id.* The ALJ determined that Plaintiff could return to her past work as a receptionist. (Tr. 16) Because the ALJ found that Ms. Robinson could perform her past relevant work, she was determined not to be disabled under the Social Security Act (the "Act"). The ALJ did find that Plaintiff had the residual functioning capacity to perform the full range of medium work. (Tr. 14) He found no evidence of loss of fine dexterity or the inability to sit for long periods, and concluded that Plaintiff also could perform the full range of light and sedentary work.[4] (Tr. 14)

The ALJ considered Plaintiff's subjective complaints of pain and fatigue, but found these complaints to be not fully credible. (Tr. 15) This conclusion was based on inconsistencies in the record (Tr. 15); Plaintiff's self-reported daily activities (Tr. 15, 203); a lack of medical evidence to support the Plaintiff's complaints of disabling pain;

---

[4]Plaintiff's past relevant work as a receptionist is considered semi-skilled, sedentary work. (Tr. 16, citing DICTIONARY OF OCCUPATIONAL TITLES (DOT) Code #237.367-038)

4

lack of prescription pain medications (Tr. 15, 58, 75, 226); the psychological report of Sam Boyd, Ph.D. (Tr.201 - 07); Plaintiff's minimal work history (Tr. 15; 222; 142); and the opinions of state agency medical consultants (Tr. 16; 134-41).

Plaintiff contends that: (1) there was no medical evidence to support the ALJ's assessment that Ms. Robinson maintained the residual functional capacity to perform her past work as a receptionist; (2) the ALJ's credibility determination was not supported by the record and that he failed to consider all relevant factors as set out in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984); and (3) the ALJ failed to develop the record properly. Defendant argues that the burden was on Plaintiff to prove that she was disabled and that the record supports the ALJ's finding that Plaintiff was able to perform her past work as a receptionist.

IV.  **Analysis:**

A.  *Standard of Review*

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g). "If the decision of the Commissioner is supported by substantial evidence on the record as a whole," that decision must be affirmed. *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court "must consider the evidence which detracts from the

Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F3d 575, 578 (8th Cir. 2006).

The ALJ is responsible for deciding fact questions, including the credibility of a claimant's subjective testimony about her limitations. *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." *Id*. at 714; see also *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain.").

Thus, this Court's review is limited. The only question for this Court is whether there is substantial evidence in the record as a whole to support the ALJ's conclusion that Ms. Robinson is not disabled under the Act.

B.     *Medical Evidence*

Plaintiff notes that there must be "some medical evidence" to support the ALJ's determination that Plaintiff retains the functional capacity to perform her past relevant work. (Plaintiff's Brief at 9)  She argues that, "there is none." (Plaintiff's Brief at 10)  A review of the medical evidence in this case, however, supports the ALJ's finding that Ms. Robinson does have fibromyalgia, but that the condition is not disabling for purposes of the Act.

Pertinent medical records reveal that Plaintiff went to the White River Rural Health Center, Inc. ("Health Center") on April 8, 2004, complaining of fatigue and of "sleeping a lot." (Tr. 151)  She returned to the Health Center on May 3, 2004, still complaining of fatigue. (Tr. 149)  On July 15, 2004, she returned to the Health Center complaining of joint pain, restless legs, chronic fatigue, and arms and legs shaking out of control. (Tr. 147)  She returned to the Health Center again on July 23, 2004, to discuss results of the laboratory tests. (Tr. 145)   Medical records indicate that the physician "reviewed very normal labs," but that "[patient] wants to pursue work up." (Tr. 145)  Plaintiff was then referred to the University of Arkansas for Medical Sciences ("UAMS") for further tests. (Tr. 145)

Plaintiff saw Dr. Eleanor Lipsmeyer and Dr. David Carrouth at UAMS. (Tr. 186-89)  Plaintiff complained of fatigue, generalized pain since February of 2004, "poor sleep," pain in her hips and hands, and some swelling in her hands. (Tr. 186) There was no mention of arms and legs shaking out of control.

Dr. Lipsmeyer found that Plaintiff had "full range of motion of all the joints." (Tr. 186)  She also found "no active synovitis or synovial proliferation." (Tr. 186-87)  "There [was] good grip and curl of the hands." (Tr. 187)  "Tender points [were] present 18/18." (Tr. 187)   Dr. Lipsmeyer diagnosed depression and fibromyalgia syndrome and recommended that Plaintiff take prescription Zoloft for depression, ibuprofen for pain, and Flexeril for bedtime sleep. (Tr. 187)   Significantly, Dr. Lipsmeyer also

7

recommended that Plaintiff increase her exercise.  (Tr. 187)  Dr. Lipsmeyer did not recommend that Plaintiff return to UAMS, and she did not recommend any prescription pain medication.  (Tr. 187)  Tests conducted at Dr. Lipsmeyer's direction indicated: (1) no acute cardiopulmonary process; (2) unremarkable cervical spine series; (3) unremarkable bony pelvis; and (4) unremarkable bilateral knees.  (Tr. 193-94)

Nothing in these medical records compels a finding that Ms. Robinson is so affected by fibromyalgia that she is unable to function as a receptionist.  Plaintiff takes exception to the finding that she could perform a full range of medium work and argues that no doctor had concluded that Robinson could perform medium work.  (Plaintiff's Brief at 9)  She concedes, however, that "agency doctors," that is, non-treating doctors, did find that Plaintiff could perform medium work in July and August of 2004.  (Tr. 134-44)  Plaintiff makes much of the fact that this assessment was made when Plaintiff had been diagnosed with chronic fatigue, but not yet with fibromyalgia.  (Plaintiff's Brief at 10)  Regardless of the label attached to Plaintiff's condition, whether fibromyalgia or chronic fatigue syndrome, the examination by "agency doctors" was conducted *after* Plaintiff had complained of disabling pain and fatigue, and the results were that Plaintiff could perform medium work.  (Tr. 134-44)  The relevant question is not what a condition is called, but rather whether symptoms prevent the Plaintiff from working.

Plaintiff complains that she is unable to lift 50 pounds or frequently lift or carry 25 pounds, as required for medium work.  (Plaintiff's Brief at 9)  While the ALJ found that

8

Plaintiff *could* perform the full range of medium work, the fact is that Plaintiff's past relevant work as a receptionist is considered "sedentary" work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

Furthermore, there is nothing in any of the medical records to indicate that Ms. Robinson must, or even should, limit her physical activity. To the contrary, Dr. Lipsmeyer, a treating physician, recommended that Plaintiff increase her level of activity and specifically recommended that Plaintiff begin water aerobics. (Tr. 187)

    C.    *Credibility Determination and Inconsistencies in the Record*

The ALJ based his finding that Plaintiff's subjective complaints were not fully credible in part on inconsistencies in the record. (Tr. 15) A review of the record reveals a number of inconsistencies. For example, Plaintiff told Dr. Boyd that she "sleeps through the night" (Tr. 203), but told Dr. Lipsmeyer she had "very poor sleep" (Tr. 186) She complained of decreased appetite (Tr. 186), but told Dr. Boyd her "appetite [was] normal," and that she had experienced "no recent weight gain or loss." (Tr. 203) When the ALJ asked Plaintiff whether there had been "any significant change in [her] weight in the last year or two," she answer that she had gained about 35 pounds and that her weight "goes up and down." (Tr. 224) Plaintiff testified at the hearing that she had a problem gripping. "I can't grip." (Tr. 226) However, Dr. Lipsmeyer found that Plaintiff had a full range of motion of all the joints, and that Plaintiff had "good grip and curl of the

9

hands." (Tr. 187)  These inconsistencies were properly considered by the ALJ in discounting Plaintiff's subjective complaints.

Plaintiff's self-reported level of activity also supports the ALJ's finding that Plaintiff's subjective complaints regarding fatigue and pain were not fully credible.  She told Dr. Boyd that she spent her days taking care of her three children, doing household chores, doing shopping, and taking naps."  (Tr. 203)  She also reported attending church, watching televison, and going to baseball games.  (Tr. 70)  The ALJ was well within bounds to take these inconsistencies into consideration when evaluating Plaintiff's subjective complaints.

Furthermore, the ALJ's decision includes a careful review of factors set out in *Polaski v. Heckler*, *supra*.  (Tr. 14-15)  Plaintiff points to medical evidence that Dr. Lipsmeyer's examination revealed that Plaintiff had eighteen out of eighteen "tender points" present. (Tr. 187)  Plaintiff goes on to argue that a person is diagnosed with fibromyalgia with as few as eleven trigger points.  (Plaintiff's Brief at 13)   Plaintiff's argument misses the point.  The ALJ found that Plaintiff had fibromyalgia, and that it was "severe" for purposes of the Act.  Finding that a claimant has a diagnosed illness is not the same as finding that the condition is disabling in that person.  See *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004)("That a claimant has medically-documented impairments does not perforce result in a finding of disability.")

D.   *Failure to Develop the Record*

Plaintiff also complains that the ALJ failed to develop the record, arguing that the ALJ should have sought additional information from Plaintiff's treating physicians. (Plaintiff's Brief at 16-17)  Plaintiff is correct in her statement that an ALJ has a duty to fully and fairly develop the record.  *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006)("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record.")   However, "Plaintiff bears a heavy burden in showing the record has been inadequately developed.  [She] must show both a failure to develop necessary evidence and unfairness or prejudice from that failure."  *Combs v. Astrue*, 243 Fed.Appx. 200, 204 (8th Cir. 2007).

In this case, the ALJ was able to make an informed decision from the available record.  There is no indication in this case that the ALJ was unable to make an assessment regarding Ms. Robinson's alleged disability, and his decision is supported by substantial evidence.  See *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005).   This Court's confidence in the ALJ's thoroughness is bolstered by the fact that the ALJ *did* send Plaintiff for a psychological consult after the hearing because he obviously believed that the record was insufficient to determine what affect Plaintiff's depression had on her ability to work.  (Tr. 229-231).

V.   **Conclusion:**

A careful review of the record as a whole reveals substantial support for the ALJ's conclusion that Mary K. Robinson is not disabled under the Act and that she is capable of returning to her past work as a receptionist, which is classified as semi-skilled, sedentary work.  Accordingly, the finding that Plaintiff is not disabled, for purposes of the Social Security Act is AFFIRMED, and this case is DISMISSED WITH PREJUDICE.

DATED this 1st day of February, 2008.

_____
UNITED STATES MAGISTRATE JUDGE